1
2
3
4
5
6
7
8

## UNITED STATES DISTRICT COURT

9

## EASTERN DISTRICT OF CALIFORNIA

10

11   JOSEPH JAMES BEASON,              **Case No. 1:15-cv-01281-DAD-EPG**

12                Plaintiff,           **FINDINGS AND RECOMMENDATIONS REGARDING PLAINTIFF'S SOCIAL**

13        v.                           **SECURITY COMPLAINT**

14   COMMISSIONER OF SOCIAL
     SECURITY,
15
                  Defendant.
16

17   **I.      INTRODUCTION**

18           Plaintiff, Joseph James Beason ("Plaintiff" or "Beason"), seeks judicial review of a final

19   decision by the Commissioner of Social Security ("Commissioner") denying his applications for

20   Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to

21   Titles II and XVI of the Social Security Act ("SSA Act").  The matter is currently before the

22   Court on the parties' briefs, which were referred without oral argument to the Honorable Erica P.

23   Grosjean, United States Magistrate Judge.[1]  Upon a review of the administrative record, the Court

24   finds the Administrative Law Judge's decision is not supported by substantial evidence and it is

25   recommended that the case is remanded to the agency for further proceedings.

26   \\\

27

28   _____
     [1] All parties have not consented to the jurisdiction of the United States Magistrate Judge. (ECF No. 19-21).

1

## II.     PROCEDURAL BACKGROUND

2

Beason filed his application for DIB and SSI on October 18, 2011. AR 213-227.[2]  The

3

applications alleged a disability onset date of June 1, 2004. AR 215.  His applications were denied

4

on March 5, 2012. AR 80-103.  Requests for reconsideration were denied on November 13, 2012.

5

AR 104-133.  Beason requested a hearing before an Administrative Law Judge ("ALJ") (AR 160-

6

162), and the ALJ heard the case on December 13, 2013 (AR 48).  Beason was found not disabled

7

by the ALJ's written decision dated February 7, 2014. AR 9-27.  The Appeals Council denied

8

Beason's appeal, rendering the order the final decision of the Commissioner. AR 1-3.  Beason

9

filed the complaint for judicial review in this Court on August 20, 2015, pursuant to 42 U.S.C. §

10

405(g) to review the final decision of the Commissioner. (ECF No. 1.)

11

## III.    THE DISABILITY DETERMINATION PROCESS

12

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or

13

she is unable to engage in substantial gainful activity due to a medically determinable physical or

14

mental impairment that has lasted or can be expected to last for a continuous period of not less

15

than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  An individual shall be considered to have a

16

disability only if:

17

. . . his physical or mental impairment or impairments are of such
severity that he is not only unable to do his previous work, but

18

cannot, considering his age, education, and work experience,
engage in any other kind of substantial gainful work which exists in

19

the national economy, regardless of whether such work exists in the
immediate area in which he lives, or whether a specific job vacancy

20

exists for him, or whether he would be hired if he applied for work.

21

42 U.S.C. § 1382c(a)(3)(B).

22

To achieve uniformity in the decision-making process, the Commissioner has established

23

a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §

24

404.1502(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive

25

finding that the claimant is or is not disabled.  20 C.F.R. § 404.1502(a)(4).  The ALJ must

26

consider objective medical evidence and opinion testimony. 20 C.F.R. § 404.1527.

27

28

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically-determinable "severe" impairments,[3] (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the RFC to perform his or her past relevant work,[4] and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the regional and national level. 20 C.F.R. § 404.1520(a)-(f).

## IV.  THE COMMISSIONER'S DECISION AS TO BEASON

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Beason did not meet the disability standard. AR 21. In particular, the ALJ found that Beason met the insured status requirements of the SSA through December 31, 2009, and had not engaged in substantial gainful activity since June 1, 2004, the onset date. AR 14. Next, the ALJ identified post gunshot wound in the back with residual back pain, lumbar spondylosis, chronic pulmonary disease, and obesity as severe impairments. *Id*. The ALJ then determined that Beason does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 16. Based on a review of the entire record, the ALJ determined that Beason had the RFC to perform light work (20 CFR §§ 416.1567(b) and 416.967(b)) except for the following limitations:

> [L]ift 10 pounds frequently, 20 pounds occasionally; sit 6 hours in an 8-hour day; stand/walk 6 hours in an 8-hour day; alternate sitting and standing at will; sitting/standing a maximum of 30 minutes at a time; never climb ladders/ropes/scaffolds, ramps/stairs; occasionally balance, stoop, kneel, crouch, crawl; and avoid heat, vibrations, fumes, odors, dusts, gases, and hazards.

AR 16.

Next, the ALJ determined Beason was unable to perform any past relevant work. AR 20.

---

[3] "Severe" simply means that the impairment significantly limits the claimant's physical or mental ability to do basic work activities. *See* 20 C.F.R. § 416.920(c).

[4] Residual functional capacity captures what a claimant "can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n. 2 (9th Cir. 2007).

1

2    The ALJ found that Beason was 38 years old on the alleged onset date, which is defined as a

3    younger individual (20 C.F.R. §§ 404.1563 and 416.963), has a limited education, and is able to

4    communicate in English (20 C.F.R. §§ 404.1564 and 416.964). *Id.*   Based on the RFC, the ALJ

5    found that there are jobs that exist in significant numbers in the national economy that Beason can

6    perform (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a)). *Id.*

7    **IV.     ISSUES FOR JUDICIAL REVIEW**

8            Beason challenges the Commissioner's decision, arguing as follows: (1) the ALJ incorrectly

9    found that Plaintiff did not meet a disability listing; (2) the ALJ improperly assessed his

10   impairments as non-severe at step two of the analysis; and (3) the ALJ erred in weighing the

11   medical evidence, which resulted in an unsupported residual functional capacity ("RFC")

12   evaluation. (ECF No. 11.)  Beason requests that the Court should reverse the Commissioner's

13   decision and remand to determine the onset date. (*Id.* at 21.)  The Commissioner opposes each of

14   these arguments. (ECF No.  17).

15   **V.      STANDARD OF REVIEW**

16           Congress has provided a limited scope of judicial review of the Commissioner's decision

17   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

18   this Court must determine whether the decision of the Commissioner is supported by substantial

19   evidence.  42 U.S.C. § 405 (g).  Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's

20   decision to determine whether: (1) it is supported by substantial evidence; and (2) it applies the

21   correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008);

22   *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

23           "Substantial evidence means more than a scintilla but less than a preponderance." *Thomas*

24   *v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the

25   record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.*

26   "Where the evidence is susceptible to more than one rational interpretation, one of which supports

27   the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

28

4

**VII.   DISCUSSION**

Beason argues it was error at step two of the five-step sequential disability inquiry for the ALJ to find his psoriasis, hepatitis C and diabetes impairments as non-severe. (ECF No. 11 at 15-17.)  The ALJ identified post gunshot wound in the back with residual back pain, lumbar spondylosis, chronic pulmonary disease, and obesity as severe impairments at step two of the sequential analysis. AR 14.  The ALJ found the remainder of Beason's medical issues to be non-severe impairments. AR 14-16.

At step two, the Commissioner determines "whether medical evidence establishes an impairment or combination of impairments of such severity as to be the basis of a finding of inability to engage in any [substantial gainful activity]." SSR 85-28, 1985 WL 568556 (1985) (internal quotation marks omitted); *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c).  Under Social Security regulations, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [an individual's] physical or mental ability to do basic work activities."[5]  20 C.F.R. §§ 404.1521(a), 416.921(a).  Social Security Ruling ("SSR") 85-28 further clarifies that an impairment or combination of impairments is "not severe" when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities *which would have no more than a minimal effect on an individual's ability to work* even if the individual's age, education, or work experience were specifically considered."  SSR 85-28, 1985 WL 568556 (1985) (emphasis added); *Yuckert v. Bowen*, 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28); *Thune v. Astrue*, 499 Fed.Appx. 701, 703 (2012) (an impairment can be found "not severe" only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work).  Put differently, the step two severity inquiry is a "de minimus screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

---

[5] Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs," including physical functions (such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling); capacities for seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting.  20 C.F.R. §§ 140.1521(b), 416.921(b).

### A. The ALJ's Findings at Step Two Concerning Beason's Hepatitis C and Diabetes Impairments Were Supported by Substantial Evidence

#### 1.  Hepatitis C

The ALJ acknowledged the existence of a Hepatitis C diagnosis and found it to be non-severe. AR 15.  Specifically, the ALJ observed that "[a]n ultrasound of [Beason]'s liver done on June 5, 2013 showed a fatty liver, ascites, and hepatosplenomegaly." *Id*. (citing Kern Medical Center progress notes at AR 711).  The ALJ further noted that Beason had not started any Hepatitis C treatment. (*Id*.)  In conclusion, the ALJ noted that "the record shows no more than minimal functional limitations… that would last for a continuous period of 12 months." *Id*.

Beason argues that this was error because the medical evidence in record suggests that his physician's reasoning in delaying treatment of this condition is that it would interfere with his psoriasis and that he would be resistant to treatment due to genetic factors. (ECF No. 11 at 16.)

The Court finds that the ALJ's decision at step two regarding Beason's Hepatitis C condition is supported by substantial evidence.  The Court agrees the ALJ's assessment that medical evidence in the record concerning Beason's Hepatitis C condition does not establish anything more than minimal limitations.  Furthermore, Beason did not assert in his testimony before the ALJ that Hepatitis C was a significant factor limiting his ability to work.

#### 2.  Diabetes

Pointing to a lack of evidence of end-organ damage, the ALJ found Beason's diabetes to be non-severe. AR 14.  The ALJ observed that the diabetes was "noted to be poorly controlled but improved on September 26, 2012, with poor diet but approximately 30 minutes of walking or biking every evening with his brother." *Id*. (citing Kern Medical Center progress notes at AR 727.)  Finally, the ALJ noted that the "diabetes was described as greatly improved with conversion to a different type of insulin." AR 15 (citing progress notes at AR 527.)

Beason argues that the ALJ erred because there was medical evidence in the record of his increasing blurry vision caused by his diabetes condition. (ECF No. 111 at 16.)  There is some medical evidence in the record reflecting a complaint about increasing blurry vision. AR 560, 705.  However, the only connection to diabetes was Beason's subjective statement that he

believed the problem was caused by his diabetes (AR 705), but no medical opinion expressly gave that opinion regarding causation.  Because no specific limitations were found in the medical evidence regarding Beason's diabetes condition, the ALJ's finding at step-two that Beason's diabetes condition is non-severe is supported by substantial evidence.[6]

### B.  The ALJ's Finding that Beason's Psoriasis Impairment Was Non-Severe Is Not Supported by Substantial Evidence.

The ALJ found Beason's psoriasis as non-severe, reasoning the evidence indicates that Beason's psoriasis "can flare up if claimant has no medications to treat it with, but it is responsive to treatment," and that "the record shows few more than minimal functional impairments resulting from the claimant's psoriasis." AR 15.  The ALJ acknowledged Beason's testimony that that "he has flares three to four times a year with lesions that are painful and crack, bleed, and itch, and that impact his ability to focus and concentrate." *Id*.  However, the ALJ reasoned that Beason's "medical records do not show any such limitations due to his psoriasis, nor are there such limitations mentioned in his function report." *Id*.  Accordingly, the ALJ found that "any limitations resulting from claimant's psoriasis are not more than minimal for a continual period of twelve months," and Beason's psoriasis was, therefore, non-severe. *Id*.

### 1.  *Medical Evidence Concerning Psoriasis*

Dr. Emanuel Dozier, M.D., conducted a comprehensive internal medical evaluation of Beason on January 18, 2012. AR 355-360.  The corresponding records indicate that Beason's psoriasis was diagnosed in 1995, and the condition affects his entire body. AR 355.  It is indicated that flare-ups include new lesions appearing daily and problems with scaling and bleeding. *Id*. The records reflect that Beason indicated that he has no significant problems with psoriatic arthritis. *Id*.  The exam conducted by Dr. Dozier noted evidence of psoriasis over the arms, legs and trunk. AR 357-359.

Continual treatment was provided for Beason's psoriasis condition by Dr. Susan Luu,

---

[6] Beason also argues that the ALJ erred in considering the severity of his Chronic Obstructive Pulmonary Disease ("COPD") impairment. (ECF No. 11 at 17.)  This argument is misplaced because the ALJ found COPD to be a severe impairment (AR 14), and imposed limitations in the RFC related to his COPD (AR 16, limitation(s) of "avoid heat, vibrations, fumes, odors, dusts, gases, and hazards" imposed).

M.D. from June 21, 2012 to August 29, 2013. AR 508-512.  These medical records reflect continual visits over this time period for lesions appearing all over Beason's body and that Beason was prescribed multiple pain medications, including Tramadol, Norco, Tylenol 3 and Vicodin, in connection with the pain caused by the lesions. *Id*.  The records also indicate that multiple medications were attempted to treat the lesions, including injections, Dielox, Fluocinoide, Erythrozone, Derma-Smooth oil, Kenalog and Methotrexate. *Id*.

Other medical records identified by Beason concerning treatment of his psoriasis condition appear in the record.  In a medical record dated August 16, 2012, a rash related to Beason's psoriasis is noted as "not being controlled with kenalog" and that methotrexate was discontinued due to Beason's Hepatitis C condition. AR 457.  In another medical record dated August October 9, 2013, it is noted that Beason's psoriasis is "currently in exacerbation encompassing all extremities, abdomen and back, on methotrexate 2.5mg PO Qweekly." AR 592.

### 2. *Beason's Testimony Concerning Psoriasis*

At the hearing, Beason provided testimony concerning his psoriasis condition. AR 68-70. He testified that his flare-ups occur on his elbows, knees, abdomen, back, and stomach. AR 69. When the flare-ups occur, they crack and bleed, causing significant pain and affecting his ability to focus/concentrate. AR 69-70.  Beason testified that the flare-ups are unpredictable, occur three to four times per year, and he must apply medication three times per day to attempt to control the lesions. AR 69.  He indicated that the medication is not effective in treating the condition. AR 70.

### 3. *Analysis*

The ALJ's finding that work limitations resulting from Beason's psoriasis condition are minimal, and therefore non-severe, is not supported by the evidence in the record.  This evidence more than adequately indicates that Beason's psoriasis is a severe condition that caused him significant pain even when the condition was treated by medication.  Of particular importance, Beason was prescribed strong pain medication, including Tramadol, Norco, Tylenol 3 and Vicodin for the pain caused by the lesions. AR 509-512.  Beason's testimony indicated that when the flare-ups occur, they crack and bleed, causing significant pain and affecting his ability to focus and concentrate. AR 69-70.  The evidence in record indicates that the type of pain

associated with Beason's flare-ups would significantly limit an individual's ability to concentrate and focus. Beason's ability to complete a normal workday and workweek without interruptions, and his ability to maintain regular attendance would be impacted by his psoriasis. Thus, Beason's physical or mental ability to do basic work activities is more than minimally impacted by his psoriasis condition.

Furthermore, the ALJ's finding that the psoriasis condition is "responsive to treatment" is not supported by substantial evidence. AR 15. The medical records from Beason's dermatologist, Dr. Susan Luu, M.D., from June 21, 2012 to August 29, 2013 demonstrate that multiple medications were attempted to treat the lesions. AR 508-512. These records indicate that the lesions caused by the psoriasis were unresponsive to treatment. Beason's testimony that the prescribed medications that he must apply to his lesions three-times daily do not provide any relief is consistent with this medical evidence. AR 70.

Accordingly, this Court recommends finding that the ALJ erred in holding that Beason's psoriasis was a non-severe condition. *See Smolen*, 80 F.3d at 1290 (providing that "… the step-two inquiry is a *de minimis* screening device to dispose of groundless claims and citing *Bowen v. Yuckert*, 482 U.S. 137, 153–54, 107 S.Ct. 2287, 2297–98 (1987)).

### C. The ALJ Properly Found That Beason Did Not Meet or Equal a Listing for Dermatitis at Step Three of the Sequential Analysis.

Next, Beason argues that the ALJ should have found that he met or equaled the requirements Listing 8.05, Dermatitis, at step three of the sequential evaluation process. (ECF No. 11 at 14-16.) At step three, the ALJ must determine whether a claimant's impairment or combination of impairments meets or equals a listed impairment set out in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). The claimant bears the burden of proving he has an impairment that meets or equals a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). To *meet* a listed impairment, the claimant must establish that he satisfies each element of the listed impairment in question. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *Tackett*, 180 F.3d at 1099. To *equal* a listed impairment, the claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and

duration" to the characteristics of a relevant listed impairment. *Tackett*, 180 F.3d at 1099 (*quoting* 20 C.F.R. § 404.1526). The ALJ is not required to call a medical expert to testify as to whether a claimant's impairment meets a listing, when the ALJ's determination that the impairment is not equivalent to any listing is supported by substantial evidence. *Castaneda v. Astrue*, 344 Fed. Appx. 396, 398 (9th Cir. 2009); *Crane v. Barnhart*, 224 Fed. Appx. 574, 578 (9th Cir. 2007) ("The signed written opinion of the state agency physician was a sufficient basis for the ALJ's equivalence determination, and the live testimony of a medical expert was not required.").

### 1.   ALJ's Findings

The ALJ found that Beason did not have an impairment or a combination of impairments that meets or medically equals the severity of the listed impairments in 20 CFR, Subpart P, Appendix 1. AR 16. The ALJ specifically considered whether Beason met or equaled Listing 8.05, reasoning as follows:

> The representative argued that the claimant met Listing 8.05 due to skin lesions that have persisted for at least three months despite prescribed treatment. I note that this Listing refers to "extensive" skin lesions, which interfere with the motion of the joints and "very seriously" limit the use of more than one extremity; "very seriously" limit the ability to do fine and gross motor movement; or "very seriously" limit the ability to ambulate. The record does not contain evidence of these "very serious" limitations in functioning due to the claimant's psoriatic lesions, nor did the claimant testify to such. Accordingly, I find that the claimant does not meet Listing 8.05, and that no further development of this issue is necessary.

AR 16.

### 2.   Beason's Argument

Beason asserts that the ALJ's reasoning construed Listing 8.05 (dermatitis) too narrowly and overlooked the broader language in Listing 8.00(C)(1) concerning skin disorders. (ECF No. 11 at 14.). Listing 8.05 mentions "psoriasis" as one example of dermatitis and defines it as "extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 8.05). Beason argues that he has been diagnosed and treated for psoriasis for several years and the treatment and extent of this condition is well documented in the medical evidence of record. (ECF No. 11 at 14.).

Beason further argues that when all of the factors of Listing 8.00 are considered in the context of his situation, he meets or equals Listing 8.05. (ECF No. 11 at 16.)  Listing 8.00(C) provides as follows:

> C. How do we assess the severity of your skin disorder(s)? We generally base our assessment of severity on the extent of your skin lesions, the frequency of flareups of your skin lesions, how your symptoms (including pain) limit you, the extent of your treatment, and how your treatment affects you.
> 1. Extensive skin lesions. Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation. Examples of extensive skin lesions that result in a very serious limitation include but are not limited to:
> a. Skin lesions that interfere with the motion of your joints and that very seriously limit your use of more than one extremity; that is, two upper extremities, two lower extremities, or one upper and one lower extremity.
> b. Skin lesions on the palms of both hands that very seriously limit your ability to do fine and gross motor movements.
> c. Skin lesions on the soles of both feet, the perineum, or both inguinal areas that very seriously limit your ability to ambulate.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 (Listing 8.00(C)).

The ALJ appears to have considered this guidance and found that "[t]he record does not contain evidence of these 'very serious' limitations in functioning due to the claimant's psoriatic lesions, nor did the claimant testify to such." AR 16.  Beason asserts that the ALJ appeared to have based her rejection of Listing 8.00 by only considering the specific examples (a-c) provided in Listing 8.00 (applicable to lesions on arms, legs hands and feet), but the examples are not intended to be exhaustive. (ECF No. 11 at 14.)  Beason asserts that Listing 8.00, by its own terms, does not preclude consideration of lesions on other parts of the body, such as those on his arms, trunk, elbows and knees from being considered "serious." (*Id.*)

### 3.  Analysis

It does not appear that the ALJ limited her consideration to lesions to specific parts of the body, as Beason suggests.  Rather, the ALJ considered the language of Listings 8.00 and 8.05 and looked specifically to the issue of whether there was sufficient evidence in the record to find that Beason's lesions interfered with the motion of the joints and "very seriously" limited 1) the use of more than one extremity, 2) the ability to do fine and gross motor movement, or 3) the ability to

11

ambulate. AR 16.  While the evidence concerning Beason's psoriasis is susceptible to more than one rational interpretation, the Court finds the ALJ's decision not to find that Beason met or equaled Listing 8.05 has support in the record.  Therefore, the ALJ's decision at step three of the sequential analysis should be upheld.  *See Thomas*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.")

### D. The ALJ Erred in Weighing the Medical Evidence

Next, Beason contends that the ALJ erred in weighing the medical evidence in the record. (ECF No. 11 at 17.)  Particularly, Beason argues that the ALJ improperly rejected the RFC limitations in Dr. Dozier's opinion (sit/stand/walk for max of 4/8 hours/day) in favor the agency opinions (sit/stand/walk for max of 6/8 hours/day). (ECF No. 11 at 18.)

The opinions of treating physicians, examining physicians, and nonexamining physicians are entitled to varying weight in disability determinations.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

However, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability."  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons.  *Id.* at 830.  While a treating professional's opinion is generally accorded superior weight, if it is contradicted by an examining professional's opinion (when supported by different independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), *citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  The regulations require the ALJ to weigh the contradicted treating physician opinion, *Edlund v. Massanari*, 253 F.3d 1152 (9th Cir. 2001), except that the ALJ need not give it any weight if it is conclusory and supported by

minimal clinical findings. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating

physician's conclusory, minimally supported opinion rejected); *see also Magallanes*, 881 F.2d at

751.

The opinion of an examining physician is, in turn, entitled to greater weight than the

opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990);

*Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating

physician, the Commissioner must provide "clear and convincing" reasons for rejecting the

uncontradicted opinion of an examining physician. And like the opinion of a treating doctor, the

opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for

specific and legitimate reasons that are supported by substantial evidence in the record. *Lester*,

81 F.3d at 830.

The opinion of a nonexamining physician may constitute substantial evidence when it is

"consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d

at 957. Such independent reasons may include laboratory test results or contrary reports from

examining physicians, and Plaintiff's testimony when it conflicts with the treating physician's

opinion. *Lester*, 81 F.3d at 831 (citing *Magallanes*, 881 F.2d at 751–55).

### 1.   ALJ's Findings

In weighing the medical opinions in the record, the ALJ gave "some weight" to the

opinion of Dr. Dozier, an internal medical consultative examiner. AR 19. Pointing to Beason's

testimony that he can stand for 30 minutes at a time, the ALJ noted that there was no support in

the record Dr. Dozier's finding of a limitation to sitting four hours in an eight hour day or

standing/walking four hours in an eight hour day. *Id*. The ALJ also pointed to a lack of

complaints to his treating physicians concerning gait restrictions or difficulty walking. *Id*. at 19-

20.

In contrast, great weight was given to the opinion of Dr. Schmidt, a psychologist

consultative examiner. AR 20. Great weight was also given to the agency assessment because it

was "consistent with the overall evidence of record." *Id*. (citing AR 104-131.)

The RFC adopted by the ALJ included limitations that Beason could sit six hours in an

eight hour day and stand\walk six hours in an eight hour day. AR 16.  Additionally, the RFC contained further limitations for "alternative sitting and standing at will; sitting/standing a maximum of 30 minutes at a time…" *Id.*

### 2. Analysis Regarding Sit/Stand/Walk Limitations

It appears that the ALJ rejected the contradictory opinion of Dr. Dozier in favor of the opinion of the agency doctors in formulating the RFC limitations related to Beason's back condition.  Dr. Dozier is an examining physician, who made detailed findings concerning Beason's back condition, whereas the agency opinion was given by nonexamining doctors, who studied the medical evidence in the record.

The opinion of an examining physician is generally entitled to greater weight than the opinion of a nonexamining physician. *Lester*, 81 F.3d at 830 (citing *Pitzer*, 908 F.2d at 506; *Gallant*, 753 F.2d 1450).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831 (citing *Pitzer*, 908 F.2d at 506 n. 4; *Gallant*, 753 F.2d at 1456.

In some instances, the Ninth Circuit has upheld the rejection of an opinion of an examining physician where the rejection was not based solely on the contradictory opinion of a nonexamining physician. *See id*.  In *Lester*, the Ninth Circuit stated:

> We have, in some cases, upheld the Commissioner's decision to reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen*, 881 F.2d 747, 751–55 (9th Cir.1989); *Andrews*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir.1995).  In *Magallanes*, we stated that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians...." *Magallanes*, 881 F.2d at 752 (emphasis in original).  Rather, as we pointed out, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751–52.
>
> In *Andrews*, there was again an abundance of evidence that supported rejection of the opinion, this time that of the examining psychologist: the opinion not only conflicted with the opinions of five nonexamining mental health professionals, but was in conflict with testimony from the claimant himself and with medical reports contained in the record. 53 F.3d at 1042–43.  Furthermore,

the nonexamining medical advisor was an expert in substance abuse, the area of the claimant's alleged disability, while the examining psychologist was not. *Id*. at 1042.  In addition, the results of psychological testing conducted by the examining psychologist were suspect, as a product of the claimant's drug use. *Id*. at 1039.  In *Andrews* there was a clear conflict between the examining psychologist's opinion and the overwhelming weight of the other evidence of record, and we concluded that the ALJ was justified in rejecting the psychologist's opinion. *Id*. at 1043.  In short, "[a]n ALJ may reject the testimony of an examining, but non-treating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts*, 66 F.3d at 184 (emphasis added) (upholding ALJ's decision to reject examining psychologist's functional assessment that conflicted with his own written report and test results).  "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Andrews*, 53 F.3d at 1039.

*Id*.

The present issue, then, is whether the ALJ gave specific and legitimate reasons supported by substantial record evidence for rejecting Dr. Dozier's limitations in favor of the agency nonexamining physicians in this case.  In rejecting Dr. Dozier's limitations, the ALJ stated:

As for the opinion evidence, I give some weight to the opinion of Dr. Dozier, the internal medicine examiner.  However, there is no support in Dr. Dozier's evaluation, or in the other medical evidence of record, for a limitation to sitting 4 hours in an 8-hour day, or standing/walking 4 hours in an 8-hour day, particularly in light of the claimant's testimony that he can stand for 30 minutes at a time.  Claimant does not mention any gait restrictions or difficulty walking in his doctor visits.
…
Great weight is given to the state agency assessment at Exhibits 5A and 6A. These assessments are consistent with the overall evidence of record.

AR 19-20.

The reasons given by the ALJ do not withstand scrutiny under the specific and legitimate standard. *See Lester*, 81 F.3d at 830-31.  The ALJ failed to specifically point to any medical evidence, other than nonexamining agency opinions themselves, which specifically contradict Dr. Dozier's assessment concerning sit/stand/walk limitations.  The ALJ stated only that Beason testified that he could stand for 30 minutes at a time and that he did not mention any gait restrictions or difficulty walking at his doctor visits.[7] AR 19-20.  However, standing for 30

---

[7] Beason further identifies a possible error by the ALJ in interpreting the results of a 2010 Magnetic Resonance Imaging ("MRI") test as a further basis to argue that the ALJ's findings were not supported by substantial evidence.

minutes at a time does not contradict Dr. Dozier's conclusions about total time standing/walking in an 8 hour day.  The two measurements relate to different things.  Nor do gait restrictions reflect on total time standing/walking.  The two reasons given by the ALJ do not amount to a "clear conflict between the examining [doctor]'s opinion and the overwhelming weight of the other evidence of record," as the Ninth Circuit found in *Andrews* and discussed in *Lester* in order to justify rejecting the examining doctor's opinion. *See Lester*, 81 F.3d at 831.

Accordingly, the Court recommends finding that the ALJ erred in failing to give specific and legitimate reasons for rejecting an examining doctor's opinion concerning sit/stand/walk limitations in favor of the opinions of the nonexamining agency doctors.

### *3.   Analysis Regarding Use of a Walker*

The ALJ's finding regarding Beason's use of a walker is supported by substantial evidence.  With respect to the walker, the ALJ recalled Beason's testimony that no doctor prescribed the walker, he did not need it to walk, and that that he used the walker for a seat after 15-20 minutes of walking. AR 17.  The ALJ also pointed to Dr. Schmidt, a consultative examiner, who noted that Beason's use of the walker more for balance and assurance. AR 19-20.  Finally, the ALJ noted that the medical records did not indicate that Beason needed the walker as a result of any gait restrictions or difficulty walking. AR 20.

Beason points out that Dr. Dozier was the only doctor to physically examine him, and Dr. Dozier concluded that Beason needed the walker. AR 359.  Beason also suggests that the ALJ misconstrued his testimony. (ECF No. 11 at 20.)  The testimony regarding the use was the walker was as follows:

> Q:What about walking? How long can you walk at one time?
> A: I don't know, maybe about 15 minutes, something like that. I Can't walk that far.  I've got to sit down every now and then for my COPD.
> Q: Okay. So is that why you have to sit down, because you start getting short of breath after you walk?
> A: Yeah, plus my back too. It's a combination of both.
> Q: Okay. And I see that you have a walker and I saw the walker in your record as

(ECF No. 11 at 18.)  The ALJ noted that Beason "was seen for chronic low back pain on February 9, 2010, and his lumbar spine MRI was not felt to be compatible with his symptoms." AR 18.  Beason points out that the MRI was related to a distinct, "acute episode," and thus, the ALJ may have mistakenly read the MRI results too broadly. (ECF No. 11 at 18.)

well. One thing I didn't see is that your doctors prescribed the walker. Have your doctors prescribed you a walker?

A: No. I bought that myself.

Q: Okay, so tell me why you use the walker?

A: Because I can't go that far without sitting down. I've got to sit down, because of my breathing and back. I can only go so far… then I've got to sit down.

Q: Okay. So you use the walker to give you a place to sit… after you've walked 15 or 20 minutes, is that right?

A: Yes. That's correct.

Q: Let me ask you, and this is maybe a weird hypothetical but let me ask it anyway.  If you're walking and you go 15-20 minutes and there's a chair available to you, so you can sit down. Would you still need your walker to walk?

A: I, yes.

Q: Let's just say there was… in some magical world that there was… you walk 15-20 and lo and behold there's a chair… Would you need the walker to walk? Or you just need it to make sure that you have a place to sit down.

A: I just need a place to sit.

AR 61-63.

The Court finds that this testimony and the other evidence identified by the ALJ sufficiently support the ALJ's finding concerning Beason's use of the walker.  Therefore, the ALJ's decision not to include a limitation in the RFC regarding use of a walker was supported by substantial evidence.

### E.  Because the ALJ's RFC Formulation Was Incorrect, the ALJ's Findings at Step Five Was Not Supported by Substantial Evidence

As discussed in Part D, above, the Court recommends finding that ALJ erred in rejecting the sit/stand/walk limitations found by an examining doctor concerning Beason's severe back impairment.  As discussed in Part B, above, the Court further recommends finding that ALJ also erred at step two of the five-step sequential disability inquiry in concluding that Beason's psoriasis condition was a non-severe impairment.  The Commissioner argues that any error by the ALJ was harmless because the outcome of the analysis would remain unchanged.  The Court does not agree.

The Ninth Circuit has stated the following with respect to the fifth step of the sequential analysis:

At the fifth step of the sequential analysis, the burden shifts to the Commissioner to demonstrate that the claimant is not disabled and can engage in work that exists in significant numbers in the national economy. 20 C.F.R. §

17

404.1520(a)(4)(v); *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010).  The ALJ may meet his burden at step five by asking a vocational expert a hypothetical question based on medical assumptions supported by substantial evidence in the record and reflecting all the claimant's limitations, both physical and mental, supported by the record. *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009); *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002); *Desrosiers v. Sec'y. of Health & Human Servs.*, 846 F.2d 573, 578 (9th Cir. 1988) (Pregerson, J., concurring) ("The ALJ's depiction of the claimant's disability must be accurate, detailed, and supported by the medical record."). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir.1993) (internal quotation marks and citation omitted).

*Hill v. Astrue,* 698 F.3d 1153, 1162 (9th Cir. 2012).

Here, the ALJ presented a set of hypotheticals to the vocational expert ("VE"), Jeff Beeman. AR 71-78.  Utilizing the limitations relating to Beason's back condition from the nonexamining agency doctors that Beason could sit six hours in an eight hour day and stand\walk six hours in an eight hour day, the VE testified that Beason could not perform his past work (step four) but could perform "sedentary, unskilled regionally and nationally, and the majority of light unskilled" work (step five). AR 73.  The ALJ continued to further degrade the RFC used in the hypotheticals posed to the VE, imposing some limitations that were ultimately incorporated into the final RFC, such as alternate sitting/standing and sitting/standing limited to 30 minutes at a time. AR 74.  The VE testified that there were still jobs in the regional and national economy that Beason could perform (step five). AR 75.

However, when the ALJ specifically changed the hypothetical to include all of the limitations found by Dr. Dozier, the VE testified that Beason could not perform his past work (step four) and that the use of the walker would eliminate all light and sedentary jobs in the national economy (step five). AR 76-77.  Thus, Beason would be disabled if all of the limitations found by Dr. Dozier were incorporated into the RFC, including use of the walker.  The Court concluded in Part D.2, above, that ALJ's rejection Dr. Dozier's stand/sit/walk limitations were not supported by substantial evidence.  However, the Court also concluded in Part D.3, above, that the ALJ's rejection of Dr. Dozier's requirement of use of the walker was properly supported.  This picture is further muddied by the Court's finding in Part B, above, that the ALJ erred at step

18

two of the analysis in finding that Beason's psoriasis impairment is non-severe. As a result, the hypotheticals posed to the VE were "incomplete, flawed, and not supported by substantial evidence in the record." *See Hill*, 698 F.3d at 1161-62 (remanding for further proceedings based on flawed and incomplete RFC where the ALJ excluded panic disorder from the claimant's list of impairments and instead characterized her diagnosis as anxiety alone).

## VI.   THE COURT SHOULD DIRECT REMAND FOR FURTHER PROCEEDINGS

Given the above, the Court must determine whether this action should be remanded to the Commissioner with instructions to immediately award benefits or whether this action should be remanded to this Commissioner for further administrative proceedings. Remand for further proceedings is appropriate when an evaluation of the record as a whole creates serious doubt as to whether the claimant is in fact disabled. *Garrison v. Colvin,* 759 F. 3d 995, 1020 (9th Cir. 2014). Conversely, a Court should remand with for an award of benefits when: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id*. at 1020. Even if all three of these criteria are met, the Court can retain flexibility in determining an appropriate remedy. *Brown-Hunter v. Colvin*, 806 F. 3d 487, 495 (9th Cir. 2015).

Here, remand is appropriate because, as discussed above, the ALJ's RFC determination was flawed and the hypothetical questions were incomplete and included incorrect assumptions. The ALJ did not consider the combined effect of all of Beason's mental and physical impairments in formulating the RFC. Beason's limitations associated psoriasis include, but are not limited to, impairments related to concentration resulting from periodic episodes of significant pain. The ALJ included assumptions in the hypotheticals posed to the vocational expert that Beason is capable of completing a normal workday and workweek without interruptions, and that he can maintain regular attendance. *See Hill*, 698 F.3d at 1162 (citing *Harman v. Apfel*, 211 F.3d 1172, 1180 (9th Cir. 2000)). Furthermore, the hypothetical posed to the VE did not include the sit/stand/walk limitations found by Dr. Dozier.

1   Finally, remand is further appropriate to determine the correct disability onset date.

2   Beason's applications include an alleged onset date of June 1, 2004, but Beason points out that he

3   last met the insured status requirements of the SSA on December 31, 2009. (ECF No. 11 at 21.)

4   He concedes that the medical record before that time is "almost nonexistent and too slight to

5   support his claim back that far." (*Id.*)  Beason states that the medical record is "strong from the

6   date of his protective filing date" of October 18, 2011, but remand is likely necessary to

7   determine the actual onset date. (*Id.*)

8   **VII.    FINDINGS & RECOMMENDATIONS**

9   Based on the foregoing, it is RECOMMENDED that:

10   1.   The Court GRANT Beason's appeal from the administrative decision of the

11   Commissioner of Social Security.

12   2.   The Court FIND that the ALJ's decision that Beason is not disabled is not supported by

13   substantial evidence in the record as a whole.

14   3.   This case be REMANDED to the agency for further proceedings consistent with these

15   Findings and Recommendations.

16   4.   The Clerk of the Court be DIRECTED to enter judgement in favor of Plaintiff,

17   JOSEPH JAMES BEASON, and against Defendant, COMMISSIONER OF SOCIAL

18   SECURITY.

19   These findings and recommendations will be submitted to the United States District Judge

20   assigned to this case pursuant to the provisions of Title 28 of the United States Code section

21   636(b)(1). Within fifteen (15) days after being served with these findings and recommendations,

22   the parties may file written objections with the Court. The document should be captioned

23   "Objections to Magistrate Judge's Findings and Recommendations."

24   \\\

25   \\\

26   \\\

27   \\\

28   \\\

20

The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *Bastidas v. Chappell*, 791 F.3d 1155, 1159 (9th Cir. 2015).

IT IS SO ORDERED.

Dated:   **February 14, 2017**                     /s/ *Erica P. Grosjean*
                                                 UNITED STATES MAGISTRATE JUDGE

21